# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CARL COARTNEY, | ) | CASE NO. 8:05CV76 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| OILGEAR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 31). The Plaintiff Carl Coartney is a former employee of the Defendant Oilgear Company. Oilgear terminated Coartney's employment in 2002, for the stated reason that Coartney consistently failed to meet production standards. Coartney denies that Oilgear's stated reason for the termination is true, and he contends that Oilgear unlawfully targeted him for termination in retaliation for Coartney's use of the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2615(a)(2)(2000),[1] and in retaliation for filing a worker's compensation claim in 2002. The matter has been fully briefed (Filing Nos. 33 and 42), and evidence in support of and against the motion has been submitted (Filing Nos. 32 and 42, Attachments 2-13). Because I conclude that genuine issues of material fact remain to be decided, the motion will be denied.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based on the Plaintiff's allegation that the Defendant violated a law of the United States, the FMLA. The Plaintiff's claim of unlawful retaliation based on his filing of a workers' compensation claim

---

[1] In his Complaint, Coartney also alleged that Oilgear interfered with his rights under the FMLA, but he has conceded this portion of the FMLA claim. (Filing No. 42, page 20). Accordingly, this claim shall be dismissed.

arises under Nebraska law, and this Court, in its discretion, will exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

### Factual Background

Oilgear manufactures hydraulic pumps and other fluid power components, electronic controls, and systems that integrate the components and controls. A brief explanation of Oilgear's manufacturing process may be helpful for the analysis. The manufacturing process for some parts requires the materials to be handled by several different machine operators who each contribute to the manufacture of the part. If, during the manufacturing process, an employee who is running one of the machines makes a mistake, that part becomes scrap. When a potential part becomes scrap, Oilgear loses the value of the materials and of the labor that went into the manufacture of that part. Several current and former Oilgear employees agree that Oilgear management has emphasized the quality of the production, at least as much as, if not more than, the rate of production so that creation of scrap is minimized. (Drawbridge Dep. at 13-14, 23-24; Hochstein Dep. at 8, 17, 35, 63)[2].

Coartney began his employment with Oilgear on August 1, 1994, as a maintenance employee. After his 90-day review, Coartney was promoted to a grade VI, Welder II position. A few months later, Coartney was temporarily reassigned to maintenance, although his pay was not decreased. On August 6, 1996, Coartney was transferred to a grade IV, Welder I position, and again there was no change in his pay. During his

---

[2] The depositions of Kathy J. Drawbridge, Todd J. Hochstein, Wilbur E. Smith, Julie Cernin, and Jesse L. Thompson, and the Affidavits of Raymond Aranza and Carl Coartney are located at Filing No. 42. Portions of John Metzler's Deposition are at Filing No. 42 and at Filing No. 32. The deposition of Carl Coartney and the Affidavit of Julie Cernin are at Filing No. 32.

employment, he performed as a welder when needed, and when those services were not needed, he operated a variety of machines.

To at least some of his co-workers, Coartney had a reputation for making high-quality products that seldom resulted in scrap. (Drawbridge Dep. at 20:10-11; Hochstein Dep. at 7; Thompson Dep. at 8-9). In their view, Coartney's workmanship, coupled with what his co-workers characterized as an average production rate, made Coartney a good employee. (Drawbridge Dep. at 20; Hochstein Dep. at 8, Thomson Dep. at 9, 15). Metzler agreed in Coartney's August 2001 performance evaluation that, "Carl's producing a quality part." (Metzler Dep. at 44:18-45:1).

At Oilgear, an employee's productivity is measured against a "standard." Metzler explained that a "standard" represents the production level that Oilgear's management expects an employee to achieve when operating a particular machine. It appears that the standards are measured based on the number of tasks completed per hour. Because the machines perform different functions, and because the machines can be used on different materials for a variety of end products, each machine has its own standard depending on its use. The machines' standards are communicated to the Oilgear employees on a written instruction paper, but, in the last several years, the standards have been under review by Oilgear's engineering employees who have performed time studies on some of the machines to establish proper standards. (Drawbridge Dep. at 14-18).

Metzler stated that if an employee can achieve 80 percent of standard, then that employee's productivity is satisfactory. To Metzler's knowledge, Coartney never achieved a normal production standard, and among the employees that Metzler has supervised, he

3

knows of no other employee who consistently failed to meet production standards as did Coartney.  (Metzler Dep. at 16:3-15; 48:18-49:21).

According to Coartney and other Oilgear employees, current employees Kathy Drawbridge and Todd Hochstein, and former employees Jesse Thompson and Wilbur Smith, it is not uncommon for employees not to achieve standards.  (Coartney Aff. ¶¶ 3, 7, 14; Drawbridge Dep. at 17, 23:21-24:2; Hochstein Dep. at 10; Thompson Dep. at 7, 14-15; Wilbur Smith Dep. at 11-12).  Some current and former Oilgear employees agree that the "standards" are not reasonably set.  They stated that there is no objective or meaningful way to measure an employee's production rates because the employees operate different machines, possess varying amounts of experience and practice on each machine, and have different abilities and dexterity.  (*Id.*)   One employee, Jesse Thompson, testified that he never saw a standard memorialized on paper, but that Metzler and Ellis would sometimes direct him to assist other employees who were not achieving the production standard.  (Thompson Dep. at 7:7-15; 15:8-16). Coartney was never one of the employees whom Thompson was directed to assist.  (*Id.*)

During the time relevant to Coartney's claims, John Metzler was Coartney's supervisor, and Sid Ellis was his manager.  Julie Cernin was the company's human resources manager.  In Coartney's performance review dated August 1, 2001, before his shoulder injury, it is noted that Coartney "meets requirements" in 10 of 11 categories, but that he "needs improvement" in one category entitled "productivity."

Oilgear has a progressive discipline policy. There is no dispute that Coartney received the following discipline:

• March 7, 2002, a verbal warning for continued low productivity;

4

- September 5, 2002, a written warning for returning to work after clocking out in violation of the Company's policy;

- January 7, 2003, a written warning and Notice of Suspension for his failure to meet and maintain normal production standards; and

- February 13, 2003, a Final Written Warning and Termination for low productivity.

On March 12 and on March 22, 2002, within weeks of Coartney's first verbal warning for low productivity, he injured his shoulders.  (Coartney Aff. ¶ 5).  Coartney completed a first report of injury on March 25, 2002, and on the same day, he requested and received FMLA leave.[3]  Oilgear denied Coartney's workers' compensation claim.  (Cernin Dep. at 36:3-6).  Coartney took FMLA leave from March 25, 2002, through June 21, 2002, during which time Coartney had surgery on his shoulder and recuperated from that surgery. Coartney returned to work with restrictions from his physician on June 21, 2002.  New restrictions were issued on September 19, 2002.  Coartney took intermittent leave of three hours per workday from June 21, through August 2, 2002, related to his shoulder.

By August 2, 2002, Coartney had taken more than the amount of leave to which he was entitled under the FMLA.  Oilgear's FMLA policy permits employees to take FMLA on a "rolling 12-month calendar."  According to Oilgear's human resources representative, Julie Cernin, Coartney used his twelve week annual allotment of FMLA leave during 2002-03.

---

[3] During his employment at Oilgear, Coartney took FMLA leave on three occasions. Coartney took leave in February 1999 for a hernia and bladder cancer; in May 2000 to care for his mother who suffered from "a serious health condition," and in March 2002 for his shoulder surgery. Coartney makes no claim of retaliation related any leave other than the March 2002 leave for shoulder surgery.

5

Coartney's employment was terminated by Oilgear on February 13, 2003. The termination occurred more than seven months after he returned from his FMLA leave, and more than six months after his last intermittent leave was taken.

## Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Nuzum v. Ozark Automotive Distributors, Inc.*, 432 F.3d 839, 842 (8th Cir. 2005). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.  I am mindful, however, that of the Eighth Circuit Court's recent reminder:

> Summary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir.2004); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999); *see also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir.2000) (collecting cases). Summary judgment should not be granted unless the evidence could not support any reasonable inference of discrimination. *Lynn v. Deaconess Med. Ctr.- West Campus*, 160 F.3d 484, 486-87 (8th Cir.1998).

*Peterson v. Scott County*,  406 F.3d 515, 520 (8th Cir. 2005).

## Analysis

Coartney alleges that Oilgear violated his rights under the FMLA by firing him in retaliation for his exercise of FMLA leave and that Oilgear violated his right under Nebraska law to be free from retaliation for filing a workers' compensation claim.  "Retaliation through an adverse employment action based on an employee's exercise of FMLA rights is actionable." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005), citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827 (8th Cir. 2002).

To establish a prima facie case of retaliation, Coartney must show that he exercised rights afforded by the FMLA, that he suffered an adverse employment action, and that there was a causal connection between his exercise of rights and the adverse employment action. *Id. citing Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002).  "An employee can prove FMLA retaliation circumstantially, using a variant of the burden shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.*

7

Coartney also claims that Oilgear terminated him in retaliation for filing a workers' compensation claim. The Nebraska Supreme Court has recognized an action for retaliatory discharge when an employee has been discharged for filing a workers' compensation claim. *Jackson v. Morris Communications Corp.,* 657 N.W.2d 634, 641 (Neb. 2003). Whether the claim is based in the FMLA or a violation of Nebraska law, "[t]he ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent." *Wallace v. DTG Operations, Inc.*, __F.3d __, __ (8th Cir. 2006) 2006 WL 783376 at 6.

It is undisputed that Coartney filed a workers' compensation claim, and that he exercised his right to take FMLA leave. There is no dispute that Coartney's employment with Oilgear was terminated. Thus, whether Coartney can present evidence of causation sufficient to overcome Oilgear's motion for summary judgment is the sole remaining issue on the FMLA retaliation claim and the workers' compensation retaliation claim.[4] At the summary judgment stage, "the controlling issue ordinarily is whether or not there exists a genuine issue of fact regarding *any* discriminatory motive." *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005)(emphasis in original).

Oilgear contends that Coartney cannot demonstrate evidence sufficient to support a prima facie case, and that it is entitled to summary judgment as a matter of law. Coartney states that he has established a prima facie case of retaliation with evidence that he was harassed by his supervisor and manager shortly after he returned from FMLA leave

---

[4] The evidence relevant to Coartney's FMLA claim and his workers' compensation claim have been presented in a manner so intertwined that it is impracticable to undertake separate analyses of the federal claim and the state claim.

8

for his shoulder surgery in June 2002.  I note that a "plaintiff's burden at the prima facie case stage of the analysis is not onerous, and '[a] minimal evidentiary showing will satisfy this burden of production.'"  *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir.2005) (quoting *Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1007 (8th Cir.2005)).

Coartney contends that the harassment began within two months of his return from FMLA leave and that during the time between his return and his termination, Oilgear was "setting him up" for termination. (Filing No. 42, Brief pp. 3, 13; Cernin Aff. Attachment 3; and Coartney Aff. ¶ 9). Evidence of harassment includes Metzler yelling at him; management constantly changing his work assignments which prevented him from gaining sufficient practice to achieve standards on a particular machine; increasing the level of scrutiny and supervision by Metzer and Ellis, and requiring him to perform work outside his physical restrictions at a pace that caused pain.  (Coartney Dep. at 66-68; Hochstein Dep. at 13-15:9; Smith Dep. at 82:19-83:12).   In addition, Coartney offered evidence that persons who did not take FMLA leave and who did not file workers' compensation claims for injuries that required significant time for recuperation were treated more favorably than he was treated.  (Hochstein Dep. at 8-9 27-33).

Oilgear contends that Coartney's evidence is insufficient to show causation, relying in part on an Eighth Circuit Court of Appeals' holding that, as a matter of law,  a two-month interval between protected activity and termination diluted any inference of causation such that the temporal connection could not justify a causal link as a matter of law.  *See Smith v. Allen Heath Sys. Inc.,* 302 F.3d 827, 832-33 (8th Cir. 2002)*, citing Kipp v. Missouri Highway and Transp. Comm'n,* 280 F. 3d 893, 897 (8th Cir. 2002).  I conclude that *Smith*

9

and *Kipp* are not fatal to Coartney's prima facie case, because Coartney does not rely solely on the temporal connection to show causation between his taking FMLA leave and his termination.  Coartney has also offered evidence of statements and actions by Oilgear supervisors and managers that lends support to an inference of causation.  Mindful of the "minimal evidentiary showing" required at the prima facie stage, I conclude that Coartney's evidence, including comments that could reasonably be construed as verbal intimidation, requiring him to work beyond his medical restrictions, frequently changing his machine assignment and stationing him outside Meltzer's office door, constitutes sufficient evidentiary showing of causation to make out a prima facie case.  *See Wallace*, __ F.3d at __, 2006 WL 783376 at 7 (8th Cir. 2006)(finding supervisor's comments that reflected animus, inconsistent application of policy, and the isolated nature of the termination, taken together, is more than adequate to support an inference of causation.)

Oilgear contends that even if Coartney can produce evidence of a prima facie case, Oilgear's evidence that Coartney's employment was terminated for a lawful reason rebuts the presumption of retaliation, and I agree.  Oilgear has presented evidence that Coartney was terminated pursuant to its progressive discipline policy for the reason that his production level was unsatisfactory.  Oilgear has demonstrated that Coartney was warned, both before and after his FMLA leave, that he had to improve his production rate.  I conclude that evidence of the discipline imposed upon Coartney and of Oilgear's disciplinary policy satisfies Oilgear's burden at this second stage and rebuts the presumption of retaliation in the summary judgment context.  *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 (1981).

10

Coartney contends that Oilgear's stated reason for his discharge, Coartney's low production rate, was simply a pretext for retaliation. Coartney admits that he received the discipline described by Oilgear, but he has presented evidence that the progressive discipline policy may have been used selectively to harass or terminate workers who had returned from FMLA or workers' compensation leave. (See Coartney Aff.; Aranza Aff.; Drawbridge Dep. at 22, 35-6; Hochstein Dep. at 37, 44, 70:2-5; Smith Dep. at 14, 31:19-37). For example, Coartney also offered evidence that employees who had made workers' compensation claims or who had taken FMLA leave due to injury *and* who had low production rates were disciplined for low production while employees who had no work restrictions and who had not taken FMLA leave were not disciplined for low production rates. Hochstein and Drawbridge identified several Oilgear employees, all of whom had low production rates, who were not disciplined for their low rates. (Hochstein Dep. at 8:17-9:17, 10:7-11:2; Drawbridge Dep. at 23). As far as Hochstein and Drawbridge know, these employees had not sustained workers' compensation injuries requiring long periods of recuperation and had not taken any FMLA leave. (*Id.*) Coartney also presented evidence that while low production rates had been noted in some employees' performance appraisals, these comments did not become the basis for disciplinary action until after those employees had sustained injuries at work and returned with restrictions. (Aranza Aff. ¶ 5, Attachment 2; Hochstein Dep. at 8-9). Speaking of their own experiences at Oilgear, Hochstein and Smith stated that on matters regarding production requirements and working conditions, Oilgear's treatment of them before they had sustained work-related injuries was better than Oilgear's treatment of them after they returned to work following injury. (Hochstein Dep. at 16:23-19:8; Smith Dep. at 21-23; 28:22-29:5). There is

11

evidence that Hochstein and Smith, and another co-worker, were required to work outside their physical restrictions upon their return to work following an injury. (Hochstein Dep. at 53:8-25; 58-61; Smith Dep. 24-25; Drawbridge Dep. at 72-73).

Coartney also presented evidence that the progressive discipline policy was intentionally misapplied to him. Coartney admits that he was disciplined for returning to work after clocking out on September 2, 2002, but he contends that the offense was an attendance issue rather than a performance issue, and that the offense warranted only a verbal warning, rather than a written warning, under Oilgear's own discipline policy. Cernin maintains that the September 2, 2002, offense constituted a work performance issue that required the written warning. The difference matters because a written warning elevated the discipline faster through suspension and to termination. (Cernin Dep. at 15-17). Coartney has offered evidence of comparable conduct being overlooked completely in cases involving co-workers who were not similarly situated to Coartney: Jackie Weilander and Dave McCarthy. (Hochstein Dep. at 19-21; 49-51).

Oilgear directs the Court to Coartney's history of taking FMLA leave without any repercussion as proof that Oilgear possessed no retaliatory animus against Coartney based on his use of FMLA leave.

I conclude that there is a genuine issue of material fact regarding whether Coartney's exercise of his FMLA leave and/or his filing of a workers' compensation claim were motivating factors in his termination. Several genuine issues of material fact remain, including but not limited to, whether Coartney had long-standing production issues; whether Oilgear knowingly used unreliable "standards" as a basis for discipline for certain employees, whether Oilgear's progressive discipline policy was applied evenly to all

12

employees or whether it was used to target employees who had taken FMLA leave or had filed workers' compensation claims, and whether Coartney's production rate was the true reason for his termination or simply a prextext for ridding Oilgear's workforce of employees who had taken FMLA leave or had filed workers' compensation claims.

> Where an employer tolerates an undesirable condition for an extended period of time, an employee takes part in protected conduct, and shortly thereafter, the employer takes an adverse action in purported reliance on the long-standing undesirable condition, a reasonable jury can infer that the adverse action is based on the protected conduct. *See Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1079-80 (8th Cir. 2005) (stating that when an employer ignored or treated as de minimis five complaints about an employee but took drastic action following a sixth, identical complaint, a reasonable jury could infer that the employer's claim of reliance on the sixth complaint was pretextual and that the employer had acted in retaliation for the employee's intervening protected conduct).

__F.3d at __, 2006 WL 783376 at 10.

## Conclusion

I conclude that Coartney has provided sufficient evidence to create a genuine issue relating to whether Oilgear's stated reason for Coartney's termination is true or simply a pretext to retaliate against him for taking FMLA leave and for making a workers' compensation claim.  Considering the evidence in the light most favorable to the non-moving party, I conclude that while a jury certainly need not resolve the factual issue of retaliatory intent in favor of Coartney, a jury reasonably could. Accordingly,

IT IS ORDERED:

1.      For the reason stated in footnote 1, the First Cause of Action in Plaintiff's Complaint, based on the Defendant's alleged interference with Plaintiff's rights under the Family and Medical Leave Act, is dismissed with prejudice; and

13

2.      The Defendant's Motion for Summary Judgment (Filing No. 31) on the

Second and Third Causes of Action is denied.

Dated this 6th day of April, 2006.


                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        United States District Judge